May please the court. Chalene Schaumbach on behalf of plaintiff appellant April Powell-Willingham. I would like to reserve three minutes for rebuttal. The Ninth Circuit has repeatedly said that form non-convenience is a drastic remedy that should only be used in rare cases and only where the defendant needs a substantial burden of proof. But here, the District Court, without holding a factual hearing, issued a six-page opinion with incomplete one-sided analysis that dismissed plaintiff's case on form non-convenience grounds. If the court had held defendants to their substantial burden of proof, we would not be here today. While the briefs below detail a series of errors, I will focus on two primary errors. First, the District Court failed to give plaintiffs choice of a home forum any deference. And second, the District Court made critical errors of law and facts in analyzing the private and public interest factors. Do you agree that the judgment would be unenforceable in South Africa against the individual defendants? We would we would argue that the District Court erred in ignoring that the judgment would be enforceable as to the U.S. defendants, but it is unclear whether it would be enforceable as to the individuals. Okay, because they contended that and I didn't see any response to that and it wasn't clear to me whether you have a counterargument to that. Right, I think our papers focus on the error committed by the court in ignoring one of the defendants, in this case the U.S.-based employer, and it has been held that where the District Court ignores one of the parties in assessing the various factors, that is a reversible error. And nowhere in the District Court's assessment of the 12 factors does it address that one of the defendants is headquartered in Washington, D.C. Right, and the judgment would be obviously enforceable against the U.S. employer of the individuals, but you also named the individuals. I mean, would you be willing to dismiss them? That is something we would investigate after further discovery. Of course, this case was dismissed at a very early stage, but that is something we would consider. But there's no agency between the South African individuals and the American corporation, is there? Well, the contract here was... Because they're different employers all together, correct? The contract here was entered into between the U.S. employer for the individual plaintiff to do work abroad with the international entity. And again, further discovery will be needed to determine how interrelated they are. They are affiliates, and they operated in conjunction in organizing plaintiff's employment. But moving to the first point I'd like to address, nowhere in the court's order does the court give plaintiff's choice of home form any deference. A plaintiff that sues in her home form is entitled to the strongest deference, and the Ninth Circuit has repeatedly held that a district court's failure to give a plaintiff's form proper deference is reversible. And second, the district court consistently understated defendants' burden in concluding that while two factors were at a trial in South Africa. And our briefing addresses how the trial court improperly assessed these ten factors. Because of time constraints, I will only address four. But even without addressing the remaining ten factors, this is sufficient to reverse. The district court committed an error of fact in assessing the first public interest factor because it ignored that numerous events occurred in California. The complaint alleges that plaintiff negotiated and entered into her employment contract while in California. She alleged that she was harassed by her colleague who had assaulted her before while she was in California. She alleged that she was subjected to discriminatory and retaliatory conduct by her supervisor while she was in California. And she also alleged that she complained about her mistreatment to her supervisor and to the HR director while she was in California. The district court's conclusion that this factor favored dismissal was based on a clearly erroneous assessment of evidence. And this is an abuse of discretion. Is there any evidence concerning any of those California activities that would not be equally accessible to the court in South Africa? It would require electronic discovery because most of these events occurred over WhatsApp or email or a teleconference. But the courts have found that in this age of technology, access to evidence is so clear that the factor should not weigh in favor of dismissal, but rather it's more, it's best assessed as a neutral factor. The district court's assessments of the second public interest factor contained a critical error of law. The court concluded, despite the party's agreement to a choice of law provision that stated United States law governs, found that South African law would apply. And this point was unaddressed by defendants in their answering brief. California law is clear that a choice of law provision applies to all claims arising out of a legal relationship created by a contract. The district court should have found that U.S. law applies here, and its failure to do so is reversible legal error. Is that true? Here the contract said that the agreement is governed by, as opposed to saying that all disputes arising out of or related to the agreement, does that make a difference? No. In Nelloid Lines BV v. Superior Court, which is a California Supreme Court case, the choice of law clause there provided that a body of law governed the agreement, and between the parties, and that was, that language was broad enough to encompass all clauses of action. And subsequently, the California Court of Appeals has actually extended the choice of law provision in an employment contract to wrongful discharge and age discrimination claims. And so there is nothing that says that the language must be so broad, but rather the creation of I'm just having a hard time. So there's a, there's an agreement that's governed by California law for your client when she entered into this agreement with, basically, with the employment agency, what is effectively the employment agency. And then she had a separate contract with the South African company, correct? Isn't that correct? There was only one contract, and one contract. But she went to work for the South African company, and you say that that was the original contract. Yes, the employment agreement states that she will serve her employer, and she was serving her employer, the US entity, by working in South Sudan as a country director. So the same, the contract that was created mentions the two entities, JAM USA and JAM International, and created the employment relationship that gave rise to her harms. Okay. I'd like to briefly address two remaining factors. The third public interest factor, the District Court concluded that California jurors would have little connection to this case. And this completely ignored that in today's global and mobile age, it is common for employees to work remotely to communicate over state and international borders. And so a California jury could easily relate to a plaintiff from their state who signed an employment contract in their state, who experienced harassment and discrimination abroad, which also continued while she worked remotely from home. And the Ninth Circuit has made clear that juries routinely address subjects that are foreign to them, addressing foreign companies, foreign cultures, and foreign languages. And the existence of any of these should not counsel in favor of dismissal. What portion of her, I understand she did actually physically go to Sudan for some employment with JAMS USA, but then she also returned home to California and worked remotely from home. What proportion of her employment was spent in each place? She was employed from March 2016 to March, she was supposed to be employed for the period of one year. She was terminated in November of 2016, and she spent from, I believe it was the early June through mid, sorry, middle of June to the end of July in California working remotely. And do you allege that some of this harassment took place over emails and apps and video conferencing while she was located in California? Yes, and it was a district court's failure to address their contention that there'll be an inability in the United States to compel the testimony of witnesses that are needed for the adjudication of the case? Yes, so there has been, there's at least one court decision which we cited from the Eleventh Circuit, where a letter was, a letter actually allowed a California party to, sorry not a California party, but a domestic party to obtain evidence from, through deposition from South Africans. So there is the possibility of this occurring, and so it would be wrong to state that no deposition testimony would be possible from South African defendants. As a practical matter, how would you, how would you do that? Would you do it also by videoconference? I've done videoconference depositions myself, they seem to work fine. But not from South Africa? No. You have to send letters through the embassy and all kinds of nonsense, and they're all formal, and you don't get to go to South Africa and do a deposition, and you can't do it by videoconference, correct? It is unclear if we would be able to, if we could not do it by videoconference, that is, that is not something we have investigated yet, but we would look into it, and with sufficient planning, I think the one case, the Eleventh Circuit case, did, there were issues with the plaintiff waiting over a year to issue the letters. We would certainly move very quickly if we, when, and if we were able to take depositions of parties in South Africa. Okay, thank you, counsel. You're over your time. Good morning, may it please the court. My name is Chris Helmick. I'm counsel on behalf of the defendants. This court should affirm the conditional dismissal of this action based on the doctrine of forum nonconvenience, because the trial court did not abuse its discretion. The parties do not dispute the standard of review here, abuse of discretion. Where there is a dispute, though, is how you weigh and apply that standard. We contend it's Hinkson. And I know the court's familiar with the test, but I want to highlight a couple features, because it demonstrates where the plaintiff's arguments go wrong. It's a two-part test. The first part says, does, did the trial... Counsel, I don't really think any of us needs to hear what the test is for abuse of discretion. I mean, we know what it is. And what you're, what we really need to hear is your answers and responses to opposing counsel's arguments that the district court erred as a matter of law. Because if the district court erred as a matter of law, when you apply the test and you ask, did the court establish the correct rule of law for relief being requested? Yes, the court unmistakably did. That's the rule of law. That's a de novo review. Then, when you go to the 14-part forum nonconvenience argument, or assessment, two parts for abuse of discretion and two parts for  determining an adequate alternative forum, and then 12 different factors in private and public interests. Those are fact determinations. And to find an abuse of discretion, you have to find that the court's decision was either illogical, implausible, or not reasonably... Yes, Your Honor. On the adequacy of the forum, the declaration you submitted in this case on the issue, I recognize that some remedy standard is not a high standard. But all you have is, subject to the underlying merits of plaintiff's case, South African law provides for a remedy for claims brought on comparable grounds, including counterparts to those claims, permits them to obtain money damages, et cetera. This is, I mean, if this were a pleading, it would not pass Iqbal. There are no facts, anything, about what the South African law, how they differ from U.S. law, what are the elements, what are the precise types of it. There's nothing to permit an assessment of the, you know, whether or not the sum remedy is met. Why isn't this enough to reverse? It's true that the South African attorney who has a master's in labor law in South Africa did not identify each specific cause of action and its counterpart. What he did do was explain the South African system that there is an actual judiciary, a labor court, that's established to handle these precise types of claims. And he explained that there are counterparts. I agree with you that he did not go into the exact statute that would be applicable. Well, can you tell us what causes of action would exist for sexual assault, sexual harassment, and wrongful termination in South Africa? I don't know the statute numbers. I don't need the numbers. I just want to know what, you know, what are the causes of action that are equivalent? Well, he says there are counterparts. I know he says that, but what are they? Sexual harassment, wrongful termination, retaliation. All of those are available in South Africa? That's what he says, and that's his testimony. I'm not sure that's exactly what he says. Well, he says there is a... We have a very, as you well know, highly sophisticated and developed set of laws, Tile 7, on discrimination, harassment, and also other state laws on in South Africa? Your Honor, the standard for finding an adequate alternative forum is that there is some relief for the wrong-sighted. And it's not a perfect mirror image. No, I know, but can you just identify anything, whether it's perfect or imperfect? He does list sexual harassment in his declaration, his affidavit. He does discuss that he's reviewed the complaint and that there are causes of action in South Africa for every one of these. Now, of course, it's not necessarily going to be a U.S. statute, but there is an analog. And the question then is, is there some remedy for these wrongs? And the answer is yes. But this is take my word for it. He did not give the court, and he didn't give us, any independent ability to assess whether or not the claim he's making of counterparts is substantiated. This isn't a high standard, but how does this give us anything to assess whether even the low standard has been met? Well, because he identifies how the body of law is established. He identifies that there is this body of law. He even identifies that South African labor law applies extraterritorially. And that employers who operate with employees outside of South Africa can hold, can be held to that South African law, which is directly applicable here. Well, wait a second. You have a choice of law provision in this employment agreement that is under California's Supreme Court and federal court authority construed quite broadly. So it would seem that the district court erred in saying that South Africa law would even apply. The district court did not, I agree, say who it would apply to. Clearly, the U.S. entity signed the contract. And then there are individuals and a foreign entity that are not signatories to it. So in that respect, I agree, the court could have been more precise as to whom that would apply. But the fact is- But in her, you can't, you don't disagree that JAM USA is the employer that's identified in the employment agreement that she signed, right? Correct. And this is about conduct of people who worked for this employer while she was working there, too. No, Your Honor. The conduct complained of, there's not a single individual who works for JAM USA that is a defendant. The defendants are South Africans, and they work for JAM International. Okay, so what is the precise relationship between JAM USA and JAM International? JAM International is a humanitarian relief organization that has organizations around the world that raise funds for it. JAM USA raises private donations and makes those contributions to JAM International so that it can feed children in Africa. But they're entirely separate. Why would the agreement be with JAM USA, and then she would go and work for JAM International? I don't quite understand that. And I don't think there's enough in the record that really answers that. There isn't much in the record, that's true. But one of the things that the organizations will do is help find people to implement some of these programs. I'm not denying that there's a relationship between them, but they are separate, distinct legal entities. When she was in South Sudan and also at the meetings in South Africa, was she in all the actions she did, was she acting underneath the employment contract with the USA entity? Yes, Your Honor. I do want to reach the point that Your Honor raised initially, and that is this judgment, any judgment rendered by this court is not enforceable in South Africa. And so it begs the question. Do we know that? We do know that. How? Because Mr. Higgs explains that there's a six-part test for a foreign judgment to be domesticated and enforced in South Africa. And he says that in this case, the first test is not met. It's jurisdiction, effectively, over the defendants, that they're resident in the district where this court would reside. So suppose that she could only enforce the judgment against her employer, JAM USA. She could enforce the entire judgment in the United States. Why does it matter? Well, it matters for the very reason you wrote in Carijano. The reason we have forum nonconvenience as a doctrine is because our broad jurisdiction and venue provisions can allow somebody to come into these courts for the purpose of harassment. They have never told us why they're suing these foreigners when they know they can't enforce the judgment. Your question, Your Honor, is why don't you just dismiss them? That's my question. We're only here because the foreigners are here, and they can't enforce that judgment against them. And they've never said one time why they're insisting on trying to sue them when it's a feckless effort. Right. But you want to cite me to Carijano. Okay. But Carijano also stands for this very strong presumption in favor of the plaintiff's choice at forum. That's right. But the harassment is I want you to come to America, defend this action, knowing all along that when you go home, nothing's going to happen because it can't be enforced. I'm sorry. I'm slightly confused. You're saying the plaintiff's harassing your client? Yes. For suing them, knowing that they cannot. This is the harassment that Your Honor's talking about as the genesis for why we have the doctrine in the first place. It's to prevent foreigners from being hauled into a U.S. court when there's no point in them being here. And it's harassment. And Piper Aircraft says the same thing. If there's no reason for the foreigner to be in this court, and this is a very unique circumstance with this case, it's very rare that you would find a U.S. judgment is not going to be enforced in a foreign country. But that's the instance here. And it's because of South African law. It's not because they're indigent and you can't just collect from them. It's that the government says we're going to protect our citizens against this precise judgment. All right. Thank you. You went over about a minute. I'll give you a minute. I apologize, Your Honor. No, it's fine. I'll just give the other side a minute too. Just briefly, I'd like to address a couple points. It is the defendant's burden here where the plaintiff is a U.S. citizen to satisfy a heavy burden of proof. And unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. And Your Honor is right to point out that the abuse of discretion test is met where the district court relies on the plaintiff. It relies on an erroneous view of the law, an erroneous assessment of the evidence, or strikes an unreasonable balance of the factors. And it did all three things here which I addressed earlier. And just quickly, the Ninth Circuit has stated that a defendant cannot just submit an expert affidavit and expect that to satisfy the adequate alternative forum inquiry. It must do more. Plaintiff has alleged 12 distinct causes of action under both federal and California law. And counsel was unable to point to an analogous federal statute. And to get back to the enforceability of a judgment in South Africa, defendant's expert said it was likely that a judgment would be unenforceable in South Africa, not that it was definitely not enforceable. And finally, there are no facts here to show that plaintiff engaged in foreign shopping. She is a resident of California and is entitled to strong deference. We request that the court reverse the district court's dismissal and allow plaintiff to proceed with litigation in her home forum. Thank you. Thank you, counsel. Powell-Willingham v. Joint Aid Management is submitted.
judges: Wardlaw, Bataillon, Collins